## Richmond

DAVID SABB

V.

NORFOLK & PORTSMOUTH BELT LINE RAILROAD CO.

June 12, 1981.

Record No. 790758.

Present: Carrico, C.J., Cochran, Compton, Stephenson, JJ., and Harman, S.J.

*Walton G. Bondurant, Jr. (Richard S. Young,* on brief), for appellant.

*John E. Clarkson (James C. Howell; Willcox, Savage, Lawrence, Dickson & Spindle, P.C.,* on brief), for appellee.

PER CURIAM.

In this action governed by the terms of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.,* the sole issue on appeal is whether the trial court erred in sustaining defendant's motion to strike, made after plaintiff's case-in-chief, on the ground that plaintiff had produced no evidence that defendant was negligent.

Under familiar principles applicable where a trial court has granted a motion to strike the plaintiff's evidence, we state the evidence in a manner most favorable to the plaintiff. At the time he was allegedly injured, David Sabb, the plaintiff, was employed as a laborer by the Norfolk and Portsmouth Belt Line Railroad Co. On January 12, 1976, he was assigned to a crew working on a portion of railroad track crossing a highway in Portsmouth. This crew was responsible for clearing out mud, rock and debris under the rails. Sabb's task that day was to take wet rocks and dirt others had loaded in his wheelbarrow to a "hill" two feet high, where he was to dump the load. While dumping a load, he slipped; the metal pipe handle of the wheelbarrow struck him in the right side of his chest and knocked him down. According to Sabb, the wheelbarrow had been overloaded by workers who were laughing and were indifferent to the amount of effort Sabb would have to use in unloading the wheelbarrow's contents. Sabb stated that the overloading of the wheelbarrow was primarily responsible for his fall. He had requested the workers to stop overloading the wheelbarrow, but they continued laughing and refused to heed his request.

Later that month, Sabb was assigned to use a jackhammer at another crossing. After initially protesting the task as physically impossible for him to complete because of his earlier chest injury, Sabb agreed to use the jackhammer after his superior told him that he either had to use it or go home. Sabb claimed his use of the jackhammer exacerbated the injury he had allegedly sustained when the wheelbarrow hit his chest.

On January 31, 1976, Sabb informed his supervisor that his injuries precluded him from assisting in the unloading of a carload of railroad ties. Sabb nevertheless performed this work assignment after his supervisor told him, "[i]f you can't go in it [the railroad car], get your bucket and go down the road." According to Sabb, the supervisor's statement meant that he would be fired if he refused to assist in unloading the railroad ties.

Subsequently, Sabb requested and received a two-day vacation in which to recuperate. On February 3, 1976, he was in such pain

that his wife took him to a hospital for medical treatment. During the period of his hospitalization, Sabb was treated by Dr. Robert W. Frye. Frye testified that the medical testing he performed revealed no objective symptoms of injury but that, by the time of Sabb's discharge from the hospital, he had concluded, on the basis of the pain's location and intensity, that Sabb had a "chest wall injury with probable separation" or fracture of the place where the rib and the breast bone meet. He believed this injury was related to the injury Sabb sustained on January 12.

██ Because questions concerning the Federal Employers' Liability Act (FELA) are federal in character, even though the action is brought in a state court, *see, e.g., Norfolk & Western Railway Co.* v. *Liepelt,* 444 U.S. 490, 493 (1980), we analyze the merits of this appeal according to the terms of the FELA as it has been interpreted by the Supreme Court of the United States, rather than looking to common-law principles governing ordinary negligence actions. Under the FELA, a railroad carrier cannot raise contributory negligence or assumption of the risk as a bar to liability. 45 U.S.C. §§ 53, 54. The carrier is liable whenever an employee's injury results "in whole or in part from the negligence of any of the officers, agents, or employees" of the carrier. 45 U.S.C. § 51. The Supreme Court has held that "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers* v. *Missouri Pacific Railroad Co.,* 352 U.S. 500, 506 (1957). In meeting his burden of producing evidence of employer negligence, an employee can rely entirely upon circumstantial evidence. *Id.* at 508. Moreover, a railroad worker may recover damages from his employer for injuries caused in whole or in part by a fellow worker. *Sinkler* v. *Missouri Pacific Railroad Co.,* 356 U.S. 326, 330 (1958). *Accord, Shenker* v. *Baltimore & Ohio Railroad Co.,* 374 U.S. 1, 11 (1963). The rationale underlying such liability is not that the employer himself is to blame, but that "justice demands that one who gives his labor to the furtherance of the enterprise should be assured that all combining their exertions with him in the common pursuit will conduct themselves in all respects with sufficient care that his safety while doing his part will not be endangered." *Sinkler,* 356 U.S. at 330.

██ After reviewing the evidence produced by Sabb, we conclude the trial court erred in granting the railroad carrier's motion

to strike the evidence. Sabb testified that his fellow workers overloaded his wheelbarrow despite his request that they not do so. Dr. Frye testified that the wheelbarrow incident was related to the injury he diagnosed during Sabb's hospitalization. Whether or not Sabb's testimony was credible, whether the overloading of the wheelbarrow resulted in an injury, and whether Dr. Frye's diagnosis was accurate are factual questions to be resolved by a jury.

We also believe that Sabb's supervisor's orders that Sabb perform physically demanding tasks, even after Sabb had told his supervisor that his earlier injury precluded him from performing the work, might likewise support a finding of negligence by the carrier under the less stringent standard imposed by the FELA. A railroad has a duty to assign its employees to work for which they are reasonably suited. A carrier breaches that duty if it knew or should have known that its assignment exposed the employee to an unreasonable risk of harm. *Fletcher* v. *Union Pacific Railroad Co.,* 621 F.2d 902, 909 (8th Cir. 1980), *cert. denied,* 101 S.Ct. 918 (1981). The Supreme Court has held that a jury question is presented when a worker, told by her supervisor not to request additional help in unloading mail, injures her back while attempting to perform a physically demanding task. *Thomson* v. *Texas & Pacific Railway Co.,* 353 U.S. 926 (1957). Moreover, when there are alternative methods for completing a task, a jury question concerning employer negligence is presented when a worker, after protesting an assignment as too physically demanding, injures himself while attempting to complete the task after being told "If you can't pull any harder I will get somebody that will." *Stone* v. *New York, Chicago & St. Louis Railroad Co.,* 344 U.S. 407, 408 (1953). *Accord, Blair* v. *Baltimore & Ohio Railroad Co.,* 323 U.S. 600, 603 (1945). *See also Davis* v. *Virginian Railway Co.,* 361 U.S. 354 (1960) (supervisor's command to complete a task faster than usual and with inexperienced assistance creates a jury question). Likewise, if a plaintiff can prove that the railroad carrier "forced a sick employee, of whose illness [it] knew or should have known, into work for which he was unfitted because of his condition, a case is made out for the jury under the Federal Employers' Liability Act." *Nuttall* v. *Reading Co.,* 235 F.2d 546, 549 (3d Cir. 1956). *Accord, Louisville & Nashville Railroad Co.* v. *Bayles,* 275 Ala. 206, 209, 153 So.2d 639, 642 (1963); *Waller* v. *Southern Pacific Co.,* 66 Cal.2d 201, 214, 424 P.2d 937, 946, 57 Cal. Rptr. 353, 362 (1967). Sabb's evidence tended to prove that

his supervisor was aware of his impaired physical condition but nevertheless insisted that he complete tasks which Sabb believed were too physically demanding. If the jury accepted Sabb's testimony as accurate, it could conclude that the railroad carrier had been negligent under the standard set by the FELA.

For the reasons stated, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*